**WINDELS MARX LANE & MITTENDORF, LLP**
*Attorneys for Alan Nisselson, Chapter 7 Trustee*
156 West 56th Street
New York, New York 10019
(212) 237-1000
Attorneys appearing:  Alan Nisselson (anisselson@windelsmarx.com)
                      Leslie S. Barr (lbarr@windelsmarx.com)
                      Erin Zavalkoff-Babej (ezavalkoff-babej@windelsmarx.com)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re                                          :
                                               :         Chapter 7
NY INNER CITY CHICKEN, INC.,                   :
a/k/a POPEYE'S CHICKEN,                         :         Case No. 1-09-40001 (JBR)
                                               :
                        Debtor.                :
-------------------------------------------------------------x

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE
TRUSTEE TO SELL, SUBJECT TO HIGHER OR BETTER OFFERS,
SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS AND TO ASSUME AND
ASSIGN THE LEASE OF THE DEBTOR'S BUSINESS PREMISES AND THE
POPEYE'S CHICKEN & BISCUITS FRANCHISE AGREEMENT;
(B) APPROVING THE STIPULATION AND ORDER BETWEEN THE TRUSTEE AND
BANK OF AMERICA REGARDING DISTRIBUTION OF SALE PROCEEDS AND
CARVE-OUT TERMS; AND (C) GRANTING OTHER RELATED RELIEF**

**TO THE HONORABLE JOEL B. ROSENTHAL,
UNITED STATES BANKRUPTCY JUDGE:**

        Alan Nisselson (the "**Trustee**"), trustee for the chapter 7 estate of NY Inner City

Chicken, Inc., a/k/a Popeye's Chicken (the "**Debtor**"), by his undersigned counsel, respectfully

represents as follows:

                                   <u>**Introduction**</u>

        1.      By this Motion, the Trustee seeks the entry of an Order (A) authorizing the

Trustee to sell, subject to higher or better offers, substantially all of the Debtor's assets (the

"**Assets**") and to assume and assign (i) the lease dated February 8, 1967, as extended from time

to time (the "**Lease**") by and between the Debtor, as tenant, and 850 Pennsylvania Avenue, LLC (as assignee of Stanita Service Corp.) (the "**Lessor**"), for the Debtor's business premises located at 850 Pennsylvania Avenue, Brooklyn, New York (the "**Premises**"), and (ii) the Popeye's Chicken and Biscuit Franchise Agreement (the "**Franchise Agreement**") by and between the Debtor as franchisee, and AFC Enterprises, Inc. (the "**Franchisor**"); (B) approving the stipulation and order between the Trustee and Bank of America regarding distribution of sale proceeds and carve-out terms; and (C) granting other related relief.

2.      The Trustee believes that the foregoing relief is in the best interests of the Debtor's estate, all creditors and parties in interest.  The sale of the Debtor's business and related assets, subject to higher or better offers, which will include the assignment of the Lease and the Franchise Agreement, represents the most expedient way to liquidate the Debtor's assets.  The Motion should be granted.

**Jurisdiction; Venue and Statutory Basis for Relief Requested**

1.      The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334 and the standing order titled *In the Matter of the Referral of Matters to the Bankruptcy Judges*, 69 B.R. 186 (E.D.N.Y. 1986) (Weinstein, C.J.).  This is a core proceeding pursuant to 28 U.S.C § 157(b).  Venue of this case and proceeding is proper in this district pursuant to 28 U.S.C §§ 1408 and 1409.

2.      The relief sought in this Motion is based upon sections 105(b)(1), 363 and 365 of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), and Rules 2002, 6004, 6007, 9006(c), and 9007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Bankruptcy Rule 6004-1(a) and the Court's Administrative Order No. 557 dated March 29, 2010 titled *In re Adoption of Sale Guidelines*.

## Procedural Background

3.        On January 2, 2009 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.        Until March 14, 2011, Debtor remained in possession of its property and continued to operate and manage its business as a Debtor-in-Possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.        On February 23, 2011, the Court entered an Order to Show Cause why this case should not be dismissed, converted to one under chapter 7, or a chapter 11 trustee should not be appointed. [Docket No 146].

6.        In Response to the Order to Show Cause, on March 7, 2011, the United States Trustee for Region 2 (the "**U.S. Trustee**") filed a *Memorandum of Law in Support of Converting this Chapter 11 Case to One under Chapter 7* [Docket No. 149].

7.        On March 14, 2011 the Court entered an Endorsed Order Converting Case from Chapter 11 to 7 for reasons set forth on the record. [Docket No. 153].  Also on March 14, 2011, the U.S. Trustee filed a notice appointing Alan Nisselson as Trustee [Docket No. 155].

8.        On March 17, 2011, the Trustee filed an Application to employ Windels Marx Lane & Mittendorf, LLP as attorneys for the Chapter 7 Trustee *nunc pro tunc* to March 14, 2011 and the Affidavit of Alan Nisselson in Support of the Application [Docket No. 158].  On March 23, 2011, the Court entered an Order Granting Application. [Docket No. 160].

## The  Debtor's Business, Assets and Significant Obligations

9.        The Debtor's principal business was to own and operate a Popeye's Restaurant Franchise (the "**Restaurant**") located at the Premises.

10.     The Debtor does not own the Premises on which the Restaurant is located.  Rather the Premises are leased from the Lessor. under the Lease.

11.     In addition to its obligations under the Lease, the Debtor is party to the Franchise Agreement with the Franchisor, AFC Enterprises, Inc.

12.     Prior to the Petition Date, Bank of America extended credit to the Debtor and holds first priority liens on and security interests in all of the Debtor's assets, including, without limitation, all of the Debtor's personal property, assets and proceeds, to secure the repayment of the Debtor's obligations to the Bank in the present approximate amount of $2,818,000.

13.     Since his appointment, the Trustee and his professionals have investigated the Debtor's history and financial affairs.  In addition to reviewing the case docket and filings, the Trustee and his representatives have held meetings or telephone conferences with the Debtor's attorney, as well as with respective counsels for the Debtor's former landlord and the current Lessor, counsel for the Franchisor, and with counsel for Bank of America.  The Trustee and his professionals have inspected the Premises and reviewed the Debtor's books and records.

14.     This Motion arises out of the analyses and conclusions drawn by the Trustee and his professionals.  The Debtor's operations were not generating sufficient revenue to pay current administrative obligations, including debt service to Bank of America, rent for the Lease and payments under the Franchise Agreement.  The Trustee strongly believes that the Debtor's business and related Assets must be sold as quickly as possible in order to reduce the administrative costs and preserve the value of  the Assets.

15.     Because the Debtor was not able to pay administrative expenses, or provide proof of insurance coverage to the Trustee, the Trustee ceased the Restaurant operations, and secured the Premises with the assistance of David R. Maltz & Co., the auctioneer (defined below).  Since

then, the Franchisor has filed a motion for relief from the automatic stay, alleging, *inter alia*, that

this shuttered Popeye's franchise might negatively impact its trade name and brand.

### Trustee Should Be Authorized to Sell Substantially All of the Assets

16.     In order to maximize the consideration received from the sale of the Assets, the

Trustee has determined in his sound business judgment that it is in the best interests of the

Debtor's estate and creditors to subject the Assets to competitive bidding at an auction (the

"**Auction**").

17.     In this regard, On March 22, 2011, the Trustee filed with this Court an application

for an Order authorizing him to retain and employ David R. Maltz & Co. ("**Maltz**"), a New York

Corporation with offices at 155 Terminal Drive, Plainview, New York 11803, as his auctioneers

effective as of March 21, 2011. [Docket No. 159].

18.     The Auction will take place at the Bankruptcy Court before the Sale Hearing

(defined herein) outside the presence of the Court.  The Trustee will arrange for an attorney

conference room at the Courthouse to conduct the Auction.

19.     In order to minimize the accrual of additional administrative expenses, the Trustee

requests authority to conduct the Auction and the Sale Hearing before the end of April.  The

Trustee also requests that the Court set a deadline for serving objections to the proposed sale no

later than three (3) days prior to the Sale Hearing.

### The Sale Terms

20.     On March 23, 2010, with Maltz's assistance, the Trustee procured and entered

into a letter agreement (the "**Letter Agreement**") with Rahman Hashimi of 42 Holiday Pond

Drive, Jericho, New York (the "**Purchaser**") for the sale of the Assets, a copy of which is

attached as Exhibit "A".

21.    The Letter Agreement contains the fundamental terms and a condition governing the Purchaser's bid (the "**Initial Bid**") to purchase the Assets, comprised of the Popeye Chicken & Biscuits Franchise located at the Premises for the sum of $300,000.00 payable to the Trustee, plus payment of all fees due the Franchisor (the "**Transfer Fees**").[1]

22.    The Assets to be sold comprise all of the Debtor's inventory, restaurant equipment, spare parts, the Lease, the Franchise Agreement, permits, telephone numbers, fax numbers, and any other assets not defined as "**Excluded Assets.**"

23.    The Excluded Assets are:

    i.    The Debtor's cash on hand and accounts receivable;

    ii.    Any equipment subject to lease obligations or any other secured claims that the Lessor or secured creditor has not consented to sell; and

    iii.    All causes of action belonging to the Debtor's bankruptcy estate under chapter 5 of the Bankruptcy Code ("**Causes of Action**").

24.    The Assets shall be sold "as is", "where is", and without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and regardless of any issues as to title, if any.

25.    The Trustee requests that all liens, claims, interests and encumbrances asserted against the Assets (the "**Encumbrances**") attach to the proceeds of sale in the order and priority that they appear as of the Petition Date, subject to any defense, claim, counterclaim, set off or right of the Debtor's estate.

---

[1] Pursuant to the Letter Agreement, the Purchaser delivered to the Trustee an amount equal to 25% of the Bid (i.e., $75,000), and acknowledged and agreed that  the deposit will be applied to the purchase price at closing of the sale, and will be non-refundable except if the Trustee defaults in closing the sale.  If for any reason the Purchaser fails to timely close the sale, the Purchaser will forfeit the deposit (together with all interest or investment income earned thereon) to the Trustee as liquidated damages.  In the event that the Trustee does not consummate the sale or execute and deliver the closing documents, his sole liability will be for the return of the deposit with interest, if any.

26.     The Purchaser or any Qualified Bidder (defined below) who is a successful bidder must agree to close the purchase and sale of the Assets within five (5) days after the Bankruptcy Court enters an Order approving the sale ("**Sale Approval Order**").

27.     The Trustee reserves the right in his sole discretion to withdraw any or all of the Assets from the Sale if the circumstances indicate that the Debtor's estate would benefit by such withdrawal.

28.     In addition, the obligation to close the Sale shall be subject to the following conditions, in addition to the customary conditions in a "Section 363" sale, to be set forth in the Terms and Conditions of Sale:

    a.    Selection by the Trustee in his sole discretion and determination by the Court that the Purchaser's offer or a Qualified Bidder's offer for the Assets is the highest or the best offer (the "**Sale Price**");

    b.    Entry of a Sale Approval Order; and

    c.    The Sale Approval Order shall provide that the ten (10) day stay following entry of the Sale Approval Order shall be waived.

### Sale Procedures

29.     The Trustee intends to use the Initial Bid as the first bid at the Auction which shall be subject to the Bankruptcy Court hearing for approval of higher or better offers for the sale of the Assets (the "**Sale Hearing**"). The Initial Bid sets forth certain conditions that comprise a portion of the bidding procedures (the "**Bidding Procedures**"), by which any competitive bidder may make a higher or better offer.

30.     Persons other than the Purchaser who satisfy the qualification requirements described below shall be defined as "**Qualified Bidders**".  A competing offeror shall be a Qualified Bidder if it:

    a.    submits to the Trustee at or before the Auction an offer that is ten percent (10%)

higher than the Initial Bid, or $330,000 (the "**Initial Overbid**");

b.  tenders an amount in cash or bank check made payable to the Trustee representing ten percent (10%) of the Initial Overbid to the Trustee at the time of the submission of its offer, which deposit will be fully refundable unless the bid is the final accepted bid, in which event the deposit shall be credited against such bid and subject to forfeiture as liquidated damages if the offeror fails to close the sale; and

c.  presents written evidence that credibly demonstrates, to the reasonable satisfaction of the Trustee, solely in his discretion, the financial ability of the offeror to complete the sale by payment of the Sale Price entirely in cash without any financing contingencies and can demonstrate adequate assurance of future performance under the Lease and the Franchise Agreement pursuant to section 365(b)(1)(c) of the Bankruptcy Code.

31.    If the Trustee timely receives one or more bids from Qualified Bidders (each a "**Qualified Bid**"), the Auction shall take place prior to the Sale Hearing.

32.    To the extent that the Initial Bid, or any higher or better bid that the Purchaser might make at the Auction, is not accepted as the highest or best bid for the assets, the Trustee seeks approval of a "break-up fee" equal to 5% of the Initial Bid or $15,000.00, payable solely to the Purchaser from the proceeds of any such sale to the successful bidder.

## Argument

33.    The Trustee's proposed sale of the Debtor's Assets under the sale procedures meets the requirements of the Bankruptcy Code and the standards for approval of asset sales under the applicable rules and the Court's Administrative Order No. 557 dated March 29, 2010

titled *In re: Adoption of Sale Guidelines* for the conduct of sales under section 363(b) of the

Bankruptcy Code.

34.    Bankruptcy Code § 704, titled "Duties of trustee", states as follows:

The trustee shall -

> (a)(1) collect and reduce to money the property of the estate for which such
> trustee serves, and close such estate as expeditiously as is compatible with the
> best interest of parties in interest;

11 U.S.C. § 704(a)(1).

35.    The Assets constitute property of the Debtor's estate under Bankruptcy Code §

541(a)(1) that the Trustee may use, sell or lease under Bankruptcy Code § 363.  Bankruptcy

Code § 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other

than in the ordinary course of business, property of the estate."  Bankruptcy Code § 105(a)

provides in relevant part: "The Court may issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title."

36.    Bankruptcy Code § 704 requires the Trustee to collect and reduce to cash property

of the estate as quickly as possible.  The Trustee has complied with this mandate under the

Bankruptcy Code and exercised appropriate business judgment in entering into the Letter

Agreement and in now seeking to sell the Assets as promptly as possible pursuant to Bankruptcy

Code §§ 363, 365  and 704.

37.    <u>Marketing Efforts</u>.  The Trustee has sought to retain Maltz as auctioneer to engage

in marketing efforts.  Maltz has substantial experience in auctioning franchise restaurants, and is

in fact presently marketing a number of Kentucky Fried Chicken franchise restaurants for

auction, which Maltz strongly believes presents a significant cross-marketing opportunity that

will be beneficial to this estate.  Maltz was also instrumental in helping to bring the Purchaser

and the Initial Bid to the Trustee.  The Purchaser's Initial Bid allows the Trustee to fix a base

value for the Assets and establishes a minimum price for Maltz to conduct the auction sale.

Under these circumstances, the Trustee believes that these marketing efforts satisfy all rule

requirements.

38.    <u>Sale Price</u>.  Since the highest or best offer shall be determined based upon an

Auction process, the Sale Price is a fair and reasonable value for the Assets and is the highest or

best under the circumstances.

39.    <u>Sale Free and Clear Under Section 363(f)</u>.  Bankruptcy Code § 363(f) provides:

> The trustee may sell property under subsection (b) or (c) of this section free and
> clear of any interest in such property of an entity other than the estate, only if

> (1)    applicable non-bankruptcy law permits sale of such property free and clear
> of such interest;

> (2)    such entity consents;

> (3)    such interest is a lien and the price at which such property is to be sold is
> greater than the aggregate value of all liens on such property;

> (4)    such interest is in bona fide dispute; or

> (5)    such entity could be compelled, in a legal or equitable proceeding, to
> accept a money satisfaction of such interest.

Bankruptcy Code § 363(f).  Section 363(f) is written in the disjunctive.  Thus, satisfaction of any

of the five conditions is sufficient to sell property free and clear of liens.  *In re Elliott*, 94 B.R.

343, 345 (Bankr. E.D. Pa 1988); *In re Red Oak Farms, Inc.*, 36 B.R. 856, 858 (Bankr. W.D. Mo.

1984).

40.    Grounds exist to approve the sale under § 363(f)(2) and (5).  The Debtor's

secured creditor has consented to the sale and all existing encumbrances upon the Assets will

attach to the net proceeds of the sale, with the validity, enforceability and priority that they had

before the Petition Date, and subject to any claim and defense that the Debtor's estate may

possess.  The Trustee accordingly requests that the Assets be transferred to Purchaser, or to the

Qualified Bidder who is a successful bidder, free and clear of all Encumbrances, with such

Encumbrances to attach to the proceeds of the proposed sale to the extent and in the priority in

which they existed before the sale subject to any claim and defense that the Debtor's estate may

possess.

41.    <u>Good Faith Under Section 363(m)</u>.  Bankruptcy Code § 363(m) provides:

The reversal or modification on appeal of an authorization under subsection (b) or
(c) of this section of a sale or lease of property does not affect the validity of a
sale or lease under such authorization to an entity that purchased or leased such
property in good faith, whether or not such entity knew of the pendency of the
appeal, unless such authorization and such sale or lease were stayed pending
appeal.

11 U.S.C. § 363(m).

While the Bankruptcy Code does not define "good faith", the Third Circuit has held that:

[t]he requirement that a purchaser act in good faith ... speaks to the integrity of his
conduct in the course of the sale proceedings. Typically, the misconduct that
would destroy a purchaser's good faith status at a judicial sale involves fraud,
collusion between the purchaser and other bidders or the trustee, or an attempt to
take grossly unfair advantage of other bidders.

*In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (citations omitted).

The Trustee submits that the Purchaser or any Qualified Bidder making a successful bid will

have acted in good faith under the *Abbotts Dairy* standards and accordingly, requests that the

Court make a factual determination that Purchaser or any Qualified Bidder making a successful

bid has purchased the Assets in good faith as defined in Bankruptcy Code § 363(m).

42.    In addition, the immediate sale prevents the value of the Assets from diminishing

over time.  The conveyance of the Assets to the Purchaser or a Qualified Bidder making a

successful bid serves the best interests of all creditors because it will represent the highest value

and the estate's best opportunity to maximize that value. Accordingly, the Trustee has considered these factors in determining the best interests of creditors in his analysis and recommendation of the sale procedures for the making of competing bids.

43.     Relief from Bankruptcy Rule 6004(h).  The sale procedures permit the Trustee and the Purchaser, or any Qualified Bidder making a successful bid, to waive the ten (10) day stay of the effect of the Sale Approval Order imposed by Bankruptcy Rule 6004(h).  As stated above, a prompt closing will relieve the Trustee and the estate of the administrative costs and burdens.  The Trustee believes that such relief is appropriate, necessary and proper under the circumstances.

## Assumption and Assignment of Executory Contracts and Unexpired Leases

44.     As noted above, under the terms of the Letter Agreement, the Purchaser or the Qualified Bidder who submits a successful bid, will be required to assume the Lease and the Franchise Agreement.  The amounts due for Transfer Fees and monetary defaults due the Lessor shall be made known to any Qualified Bidder prior to the Auction

45.     The Purchaser or any Qualified Bidder making a successful bid shall be responsible to pay, in addition to the cash consideration to be paid to the estate for the sale, any Transfer Fees associated with the Franchise Agreement.[2]

## The Notice of Sale and Hearing.

46.     Given the pressure on the Debtor's estate to bear the costs of maintaining the Assets until a sale is approved, the Trustee has determined that an expedited sale process is in the best interests of the estate.  Among other things, conducting and closing the sale before the end of this month will avoid having to incur another month's rent under the Lease.  Accordingly, the

---

[2]  To the extent possible, prior to the Auction, the Purchaser and any other Qualified Bidder will meet with the Trustee and the Lessor and the Franchisor in order to prequalify for adequate assurance of future performance.

Trustee respectfully requests that the Court schedule a Sale Hearing to consider this Motion before the end of April 2011.  As noted above, the Auction shall take place just before the Sale Hearing outside the presence of the Court.  The Trustee believes that such a sale and hearing date is necessary and appropriate because it balances the need to expeditiously dispose of the Assets with the due process rights of creditors and parties in interest.

47.     The Trustee will provide notice by serving a notice that provides the date, time and place of the Auction and Sale Hearing, terms of the sale, and the deadline for filing objections, by regular mail, electronic mail or facsimile upon the following parties: (i) the Office of the U.S. Trustee, (ii) the Debtor and its attorneys, (iii) all taxing authorities, (iv) all creditors, (v) parties having filed notices of  appearance, (vi) counsel to the Franchisor, (vi) counsel to the Lessor, and (vii) any party who has expressed an interest to the Trustee or the Auctioneer in purchasing the Assets.  In addition, Maltz shall provide a direct mailing and notice of the Auction and Sale Hearing to all parties in its data base who are likely purchasers of the Assets. Further, the Auctioneer will advertise the Auction in The New York Times and will post a notice on its Internet website, www.MaltzAuctions.com.  As noted above, Maltz is presently selling similar assets and its data base of potential buyers is quite extensive.

48.     The Trustee submits that the foregoing notice fully complies with the requirements set forth in Bankruptcy Rules 2002, 6004, 6006, 9006(c) and 9007.  Based upon the foregoing, the Trustee respectfully requests that this Court approve the form and manner of the notice proposed above.

### The Carve Out Agreement with Bank of America

49.     As stated above, Bank of America has a first priority security interest and lien on all of the Debtor's assets, which the Debtor affirmed during the superseded chapter 11 case.  The

{10633617:5}

Trustee and Bank of America have entered into an agreement in principle (the "**Carve-Out Agreement**"), whereby Bank of America will receive 85% of the net proceeds of the sale and from the collection of cash and accounts receivable, and the estate will receive a carve out from Bank of America for the benefit of the estate's creditors (other than Bank of America) equal to 15% of the net sale proceeds, and collections of the Debtor's cash and accounts receivable.  Net sale proceeds mean the gross proceeds of the sale less amounts required to be paid from that sum to:  (i) cure monetary defaults under the Lease (ii) pay auctioneer commissions and expenses, and (iii) pay Debtor's share of taxes, if any, related to the sale, and ordinary and necessary closing costs of the sale.  The Carve-Out Agreement will be submitted to the Court for approval prior to the Sale Hearing.

## No Prior Request

50.      No prior motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Trustee requests that the Court enter an Order granting this Motion and such other and further relief as is just.

Dated: New York, New York            Respectfully submitted,
         April 7, 2011

                                      **WINDELS MARX LANE & MITTENDORF, LLP**


                            By:      /s/ Alan Nisselson
                                     Alan Nisselson (anisselson@windelsmarx.com)
                                     Leslie S. Barr (lbarr@windelsmarx.com)
                                     Erin Zavalkoff-Babej (ezavalkoff-babej@windelsmarx.com)
                                     156 West 56th Street
                                     New York, New York 10019
                                     (212) 237-1000

                                     *Attorneys for Alan Nisselson, Chapter 7 Trustee of*
                                     *NY Inner City Chicken, Inc., a/k/a Popeye's Chicken*

{10633617:5}