WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, New York 10019
(212) 237-1000
Attorneys appearing:   Alan Nisselson (anisselson@windelsmarx.com)
                                    Leslie S. Barr (lbarr@windelsmarx.com)

*Attorneys for Alan Nisselson, Chapter 7 Trustee*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re

NY INNER CITY CHICKEN, INC.
a/k/a POPEYE'S CHICKEN,

                      Debtor.
-----------------------------------------------------------x

Chapter 7

Case No. 109-40001 (JBR)

**ORDER AUTHORIZING TRUSTEE'S SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS PURSUANT TO BANKRUPTCY CODE §§ 363(b)(1) and (f) AND 365 INCLUDING ISSUANCE OF A NEW LEASE AND ASSUMPTION AND ASSIGNMENT OF FRANCHISE AGREEMENT; AND (B) GRANTING OTHER RELATED RELIEF**

Upon the motion dated April 7, 2011 [Docket No. 166] (the "**Sale Motion**") of Alan Nisselson (the "**Trustee**"), trustee for the chapter 7 estate of NY Inner City Chicken, Inc. (the "**Debtor**"), by his counsel Windels Marx Lane & Mittendorf, LLP, seeking the entry of an Order under sections 105(a), 363, and 365 of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006, 6007, 9006(c) and 9007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Local Bankruptcy Rules 6004-1(a) and 6006-1 and the Court's Administrative Order No. 557 dated March 29, 2010 titled *In re Adoption of Sale Guidelines*, for among other things, (a) approving procedures for (i) the sale and assignment of substantially all of the Debtor's assets, comprised of all of the Debtor's inventory, restaurant equipment, spare parts, permits, telephone numbers, fax numbers, and any other assets not

defined in the Sale Motion as "Excluded Assets" (comprised of the Debtor's cash on hand and accounts receivable; any equipment subject to lease obligations or any other secured claims that the Lessor (defined below) or secured creditor has not consented to sell; and all causes of action belonging to the Debtor's bankruptcy estate under chapter 5 of the Bankruptcy Code), and (ii) the assumption and assignment of (A) the lease dated February 8, 1967, as extended from time to time (the "**Lease**") for the Debtor's business premises located at 850 Pennsylvania Avenue, Brooklyn, New York (the "**Premises**") by and between the Debtor, as tenant, and 850 Pennsylvania Avenue, LLC (the "**Lessor**"), as assignee of Stanita Service Corp. ("**Stanita**"), the prior lessor and present first mortgagee of the Premises, and (B) the Popeyes Chicken and Biscuit Franchise Agreement (the **"Franchise Agreement"**) by and between the Debtor as franchisee, and AFC Enterprises, Inc. (the "**Franchisor**") (together, (i) and (ii) above, the "**Sale and Assignment**") (all of the foregoing is collectively referred to as the "**Property**"), "as is", "where is", and without any representations, covenants, guaranties or warranties of any kind or nature whatsoever, and regardless of any issues as to title, if any, and free and clear of all liens, claims, interests or encumbrances of any kind or nature whatsoever in or against the Property (collectively, the "**Encumbrances**"), with all such valid Encumbrances to attach to the sale proceeds of the Sale and Assignment; and (b) approval of a breakup fee of 5% of the initial bid or such higher bid made at the Auction (defined below) in the sum of $35,000.00 to Rahman Hashimi, the initial bidder (the "**Initial Bidder**") as set forth in Exhibit A to the Sale Motion (the "**Break-up Fee**");

And the Court having scheduled (i) an auction sale for the Property on April 28, 2011 at 10:00 a.m. (the "**Auction**"), and (ii) a hearing April 28, 2011 at 11:00 a.m. to determine the highest or best offer for the Property (the "**Sale Hearing**");

And prior to the Auction, the Trustee's duly retained auctioneers, David R. Maltz & Co., Inc. ("**Maltz**"), engaged in extensive marketing efforts to publicize the Sale and Assignment of the Property, as set forth in the Sale Motion;

And Stanita and the Lessor having filed with the Court objections to the Sale Motion asserting, *inter alia*, that the Lease was terminated before the Petition Date, was not revived and therefore could not be assumed and assigned;

And an agreement having been reached among the Trustee, Stanita and the Lessor to resolve disputes concerning the Lease, whereby, *inter alia*, the Lessor agreed to enter into a new lease with the Purchaser, or in the alternative, the Second Purchaser (defined below), on terms and conditions set forth on the record of the Auction (the "**New Lease**"). As consideration for entering into the New Lease ("**New Lease Consideration**"), the following amounts shall be paid:

(a) Payment of Proof of Claim ("**Claim**") Number 36 filed by Stanita in the amount of $31,489.31;
(b) Payment of Claim Number 37 (Amended) filed by Lessor in the amount of $40,885.68, plus rent and additional rent, to wit, taxes and water and sewer, that have accrued from the date of the Claim to the Closing Date; and
(c) Legal fees to the Lessor in the amount of $12,000.00.

And the Trustee having reported to the Court at the Sale Hearing, and pursuant to the Sale Motion, that the Auction was held, at which the highest or best offer was determined to be Abdullah Sultany or his assignee or designee (the "**Purchaser**") in the sum of $1,125,000.00 plus payment of the Franchise Cure Amount as set forth in paragraph 15 below (the "**Best Offer**") and the offer of Rahman Hashimi (the "**Second Purchaser**") as the second highest or best offer for the Property in the sum of $1,100,000.00 plus payment of the Franchise Cure Amount as set forth in paragraph 15 below (the "**Second Best Offer**") (together, the "**Trustee's**

**Recommendation**");

And Bank of America, N.A. (the "**Bank**") holding a first priority lien and security interest in all of the Debtor's personal property, assets and proceeds then owned and thereafter acquired (the "**Collateral**") as more fully outlined in the secured claim filed by the Bank in the approximate amount of $2,818,000.00 (the "**Bank Claim**") in this matter against the Debtor (Claim Nos. 10-14), which lien and security interest have been acknowledged by the Debtor as properly perfected and which claim has been allowed as a secured claim by the Debtor, as more fully explained in that certain Final Order Authorizing Use of Cash Collateral by the Debtor pursuant to Sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001 (as at any time amended, modified, continued and/or extended, the "**Final Cash Collateral Order**");

And pursuant to the Final Cash Collateral Order, the Bank having been granted certain Replacement Liens (as that term is defined in the Final Cash Collateral Order) to the extent that the Bank's cash Collateral has been used by the Debtor;

And the Bank and the Trustee having entered into that certain Stipulation and Order between the Trustee and Bank of America, N.A. regarding distribution of sale proceeds and carve-out terms (the "**Carve-Out Stipulation**"), which, among other things, acknowledges that the Bank is entitled to the sale proceeds of the Sale and Assignment less certain amounts carved out for the Trustee and the Debtor's estate;

And the Court having entered the Carve-Out Stipulation prior to the date hereof or contemporaneously herewith;

And the Court having held the Sale Hearing to approve the Sale and Assignment, at which time all interested parties were afforded an opportunity to be heard;

And the Trustee having conducted all procedures leading up to the Sale and Assignment

in accordance with the Sale Motion and the Terms and Conditions of Auction Sale;

And the Court having considered the presentations of counsel, the Trustee's Recommendations, and related matters reflected on the record of the Sale Hearing;

And the Court having determined under the facts of this case at the Sale Hearing that the Sale and Assignment is in the best interests of the estate and creditors; and good and sufficient cause appearing therefore, and any objections made prior to or at the Sale Hearing having been overruled, and after due deliberation,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.　　The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014.

B.　　To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.　　This Court has jurisdiction to hear and determine the Sale Procedures Motion and the issues raised therein under 28 U.S.C. §§ 157 and 1334.

D.　　Determination of the Sale and Assignment and the issues raised therein is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O).  The statutory predicates for the relief requested in connection with the Sale and Assignment are 11 U.S.C. §§ 105(a), 363(b)(1), (f) and (m), 365(a), (b) and (f), Bankruptcy Rules 2002, 6004 and 6006, 6007, 9006(c) and 9007 and Local Bankruptcy Rules 6004-1(a) and 6006-1.

E.　　As evidenced by the affidavits of service previously filed with the Court, (i) proper, timely, adequate, and sufficient notice of the Sale Motion has been provided in

accordance with Bankruptcy Code §§ 102(1) and 363, Fed. R. Bankr. P. 2002, 6004, and 9014; (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Sale Motion, Hearing or the Sale and Assignment is or shall be required.

      F.      The Trustee has followed the procedures set forth in the Sale Motion.

      G.      The Trustee has full power and authority to execute any and all other documents, instruments or agreements to consummate the transactions for the Sale and Assignment to the Best Offer, or, if applicable, the Second Best Offer, and no consents or approvals are required for the Trustee to consummate the Sale and Assignment.

      H.      Approval of the disposition of the Property as recommended by the Trustee and the transactions contemplated thereby are in the best interest of the Debtor's estate and its creditors. Good and sufficient business justification has been established for consummating the Sale and Assignment.

      I.      Pursuant to the Sale Motion, the Auction was conducted and competitive bidding for the Property took place after Maltz's extensive marketing and solicitation efforts as set forth in the Sale Motion, all of which is fair and reasonable.

      J.      The contracts and leases of the Debtor that are to be acquired by the Purchaser, or, if applicable, Second Best Offer, are "unexpired leases or executory contracts" within the meaning of Bankruptcy Code § 365.

      K.      The amounts needed to pay the Franchise Cure Amount and the New Lease Consideration are the sole amounts necessary for the issuance of the New Lease and Assumption and Assignment of the Franchise Agreement. All amounts paid in connection with the New Lease Consideration shall be deducted from the proceeds of the Sale and Assignment prior to

calculating the "***Net Sale Proceeds***" on which the "***Carve-Out***" (as those terms are defined in the Carve-Out Stipulation) is based.

L.     The Best Offer or, if applicable, Second Best Offer, represent the highest or best offers for the Property.

M.     The terms of the Sale and Assignment are fair and reasonable and the prices to be paid by the Purchaser under the Best Offer or, if applicable, the Second Purchaser under the Second Best Offer, represent the highest or best offers for the Property.

N.     The Sale and Assignment was conducted without collusion, in good faith and at arm's length bargaining positions. The Purchaser, or, if applicable, the Second Purchaser are buyers in good faith of the Property within the meaning of Bankruptcy Code § 363(m), and are entitled to all of the protections afforded thereby. None of the Trustee, Maltz, the Purchaser, or if applicable, the Second Purchaser, engaged in any conduct that would cause or permit the Sale and Assignment to be avoided under Bankruptcy Code § 363(n).

O.     The Purchaser, or, if applicable, the Second Purchaser, are not "insiders" of the Debtor, as that term is defined in Bankruptcy Code § 101(31).

P.     The Procedures utilized by the Trustee pursuant to the Sale Motion afforded a full and fair opportunity for any entity to make a higher or better offer to purchase the Property.

Q.     The Purchaser, or, if applicable, the Second Purchaser, would not consummate the transactions contemplated by the Sale and Assignment if the Sale and Assignment was not free and clear of all Encumbrances, or if the Purchaser or, if applicable, the Second Purchaser, or their respective designees, if any, or successors could be liable in the future for any of the Encumbrances.

R.     The Property may be sold under Bankruptcy Code § 363(f), free and clear of any

Encumbrances upon or against them, with all Encumbrances that are secured by valid liens, security interests and similar encumbrances, attaching to the sale proceeds of the Sale and Assignment with the same validity, priority and effect that existed immediately prior to consummation of the Sale and Assignment and subject to any and all rights, claims and defenses that the Trustee and the Debtor may have with respect thereto.

S. The Sale and Assignment of the Property is necessary to the administration of the Debtor's chapter 7 estate.

T. The transfer of the Property to the Purchaser, or, if applicable, to the Second Purchaser, (i) is or will be legal, valid and effective transfers of the Property, and (ii) except as may be otherwise provided herein, vest or will vest the Purchaser or, if applicable, Second Best Offer, with good title to the Property, including but not limited to, the Franchise Agreement, free and clear of Encumbrances under Bankruptcy Code § 363(f).

U. The Property may be sold free and clear of Encumbrances because in each case, one or more of the standards set forth in § 363(f)(1) through (5) of the Bankruptcy Code has been satisfied and holders of Encumbrances are adequately protected by having their Encumbrances that are secured by valid liens, security interests and similar encumbrances, attach to the sale proceeds of the Sale and Assignment ultimately attributable to the specific property against which they assert such Encumbrance, with the same validity, priority and effect that existed immediately prior to consummation of the Sale and Assignment and subject to any and all rights, claims and defenses that the Trustee and the Debtor may have with respect thereto.

V. It is in the best interests of the Debtor's estate and creditors that the Trustee be given the authority to enter into, and that this Court approve the performance and consummation

by the Trustee of the Sale and Assignment and any and all other documents, instruments and agreements reasonably requested to execute, effectuate, carry out, or consummate the terms and conditions of the Sale and Assignment and this Order.

**NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that:**

1. The Best Offer is approved, and the Purchaser and the Trustee are authorized and directed to close the Sale and Assignment of the Property on or before seven days after the date of entry of this Order (unless the parties agree to extend that time) (the "**Closing**"), time being of the essence, pursuant to the terms of the Sale Motion and this Order. If the Purchaser fails to close the transactions contemplated by this Order by the Closing, the Trustee is authorized and directed to accept the Second Best Offer and close all transactions contemplated.

2. The Sale and Assignment of the Property to the Purchaser under the Best Offer, or if applicable, to the Second Purchaser under the Second Best Offer, are the highest or best offers for the Property and are approved in their entirety. The Trustee and the Purchaser under the Best Offer, or, if applicable, the Second Purchaser under the Second Best Offer, are authorized to consummate the Sale and Assignment pursuant to this Order.

3. The Trustee is authorized and empowered to sell and assign the Property to the Purchaser under the Best Offer, or if applicable, to the Second Purchaser under the Second Best Offer, free and clear of all Encumbrances and as set forth herein in accordance with the provisions of Bankruptcy Code §§ 363(b) and (f) and this Order, with all valid Encumbrances to attach to the sale proceeds of the Sale & Assignment with the same validity, priority and effect that existed immediately prior to consummation of the Sale and Assignment and subject to any and all rights, claims and defenses that the Trustee and the Debtor may have with respect thereto.

4. The Trustee is authorized and empowered to fully assume and assign the

Franchise Agreement, free and clear of all Encumbrances, subject to payment of the cure amounts set forth in paragraph 15 hereof, and in accordance with the provisions of Bankruptcy Code § 365 and this Order. The Lessor is directed to enter into the New Lease with Purchaser, or, if applicable, the Second Purchaser at the Closing under the terms and conditions set forth on the record of the Auction.

5. The Sale and Assignment shall constitute a legal, valid and effective transfer of the Property, and shall vest the Purchaser or if applicable, the Second Purchaser, or their respective designees, if any, with all right, title and interest of the Trustee and the Debtor in and to the Property, free and clear of all Encumbrances.

6. After the date of the Closing, no person or entity, including, without limitation, any governmental unit or taxing authority, may attach or perfect any Encumbrance, lien or security interest against any of the Property on account of, or collect or attempt to collect from the Purchaser, or if applicable, the Second Purchaser, their respective designees (if any), or any of their respective affiliates, or the Lessor, or Franchisor, any tax or any other debt or liability of any nature alleged to be owing by the Debtor (a) for any period prior to the date of the Closing, or (b) assessed or stated prior to and/or payable after the date of the Closing for any period prior to the date of the Closing.

7. To the extent the transfer of the Property to the Purchaser, or if applicable, to the Second Purchaser at Closing is subject to taxation under any state or local law imposing a stamp, transfer or similar taxes, the Purchaser, or, if applicable, the Second Purchaser, shall pay such tax in full at Closing.

8. With respect to any document or instrument evidencing any Encumbrance with respect to any of the Property, the Purchaser or if applicable, the Second Purchaser, is authorized

to file, display, register or otherwise record a certified copy of this Order which, once so filed, displayed, registered or otherwise recorded, shall constitute conclusive evidence of the release and discharge of such Encumbrance in or as against the Property, and of the Purchaser's, or, if applicable, Second Purchaser's ownership of and rights in the Property.

9. This Order shall be self-executing and all Encumbrances shall be deemed released from the Property (with such Encumbrances to attach to the sale proceeds of the Sale and Assignment), and the proceeds of the Sale and Assignment shall be distributed on the date of the Closing as authorized herein.

10. The Trustee and the Purchaser, under the Best Offer, or if applicable, the Second Purchaser under Second Best Offer, are hereby authorized and directed to execute, deliver, implement and fully perform the Sale and Assignment and such documents, instruments and agreements that may be reasonably necessary or desirable to implement the terms of this Order and the Sale and Assignment, expend or cause to be expended such funds, and to do or cause to be done such additional things as may be necessary or appropriate to implement, effectuate and consummate the transactions contemplated by the terms of this Order and to effectuate the Sale and Assignment.

11. Neither the Trustee, the Debtor, any creditor, any governmental unit, any other party in interest, or any person or entity having notice or actual knowledge of this Order shall take or cause to be taken any act or action of any nature that would interfere in any way with the transfer of the Property and the Franchise Agreement to the Purchaser or if applicable, the Second Purchaser, or their respective designees, if any, pursuant to this Order.

12. Upon Closing, Purchaser shall pay to the Trustee the sum of $1,125,000.00, less any deposits made to and held by the Trustee, which represents the full amount of the Best Offer.

If applicable, Second Purchaser shall pay to the Trustee the sum of $1,025,000.00, which, together with the deposit of $75,000.00, represents the full amount of the Second Best Offer.

13. Notwithstanding anything to the contrary set forth in the Sale Motion or this Order, the Bank Claim will continue to be secured by the Bank's duly-perfected first priority security interest and lien, which shall attach to all sale proceeds of the Sale and Assignment. The disbursement of the sale proceeds of the Sale and Assignment shall be governed by the terms and conditions of the Carve-Out Stipulation.

14. The Franchise Agreement shall be deemed assumed by the Trustee at Closing and immediately assigned to Purchaser, or if applicable, Second Purchaser, or their respective designees, if any, in accordance with the provisions of Bankruptcy Code § 365. The New Lease shall commence at the Closing. As of the Closing, the New Lease and the Franchise Agreement shall be deemed in full force and effect and, subject to paragraph 15 below, to have no defaults thereunder.

15. At the Closing, the following payments shall be made:

(a) To Stanita and Lessor: The Trustee shall pay the New Lease Consideration as consideration for the issuance of the New Lease as follows:

    (i) The sum of $31,489.31 to Stanita; and

    (ii) The sum of $52,885.68 plus rent and additional rent, to wit, taxes and water and sewer, that have accrued from the date of the Claim to the Closing Date to Lessor.

(b) To Franchisor:

    (i) *Franchise Cure Amount.* The Purchaser, or, if applicable, Second

        Purchaser, shall cure all monetary defaults under the Franchise Agreement by paying the amount of $43,498.94 to Franchisor.

   (ii)   *Non-monetary defaults*. The Purchaser, or if applicable, Second Purchaser, shall be deemed to have provided adequate assurances with respect to cure of the Debtor's non-monetary defaults under the Franchise Agreement.

16.    After the date of the Closing, any person or entity having notice or actual knowledge of this Order and who is in possession of any property of the Debtor or its estate that constitutes the Property shall immediately deliver such property to Purchaser, or if applicable, Second Purchaser and account to Purchaser, or if applicable, Second Purchaser for such property.

17.    After the date of the Closing, any person or entity having notice or actual knowledge of this Order is forever barred, estopped, restrained and permanently enjoined from: (a) possessing or using any Property without the prior written consent of Purchaser, or if applicable, Second Purchaser, (b) exercising any control or dominion over any Property without the prior written consent of Purchaser, or, if applicable, Second Purchaser, (c) directly or indirectly disparaging Purchaser, or, if applicable, Second Purchaser concerning the Sale and Assignment and/or Purchaser's or Second Purchaser's acquisition, use, operation or other disposition of the Property, or (d) interfering with the Closing or with any rights of Purchaser, or if applicable, Second Purchaser its designee (if any) or its successors and assigns under this Order with respect to the acquisition, use, operation or other disposition of the Property, except that neither this paragraph 17 nor any other provision of this Order shall limit Franchisor's future exercise of rights and remedies under the Franchise Agreement, Personal Guaranty Agreement(s), and/or any other agreements between the parties as contemplated hereunder and

pursuant to the Franchise Agreement, with respect to the Purchaser's, or if applicable, Second Purchaser's, obligations as "Franchisee" under the Franchise Agreement, Personal Guaranty Agreement(s), and/or any other agreements between the parties as contemplated hereunder and pursuant to the Franchise Agreement.  On and after the Closing Date, the Trustee shall: (i) deliver to Purchaser, or if applicable, Second Purchaser, any Property that comes into the Trustee's possession, custody or control; (ii) cooperate with Purchaser or if applicable, Second Purchaser in compelling or obtaining the turnover or delivery of any Property; and (iii) take reasonable steps, at Purchaser's, or if applicable, Second Purchaser's expense, to cause any former employee of the Debtor who does not become employed by Purchaser, of if applicable Second Purchaser or any other person known or becoming known to the Trustee to have possession, custody or control of any Property, to deliver and turn over to Purchaser or Second Purchaser any Property.

18. This Court has, and shall retain, exclusive jurisdiction to implement and enforce the terms and provisions of this Order including, without limitation, the turnover and delivery to Purchaser or, if applicable, Second Purchaser, of any Property.

19. Except as otherwise agreed, Purchaser, or, if applicable, Second Purchaser, shall have no obligation to pay any wages, bonus, severance pay, benefits (including contributions or payments to or concerning any employee benefits plan or employee welfare benefits plan) or payments of any nature with respect to persons who were employed by the Debtor.  The Purchaser's or if applicable, Second Purchaser's, acquisition of the Property shall not cause Purchaser, or if applicable, Second Purchaser, its designee, its successors and assigns to be deemed a successor in any respect to the Debtor or its business within the meaning of any federal state or local statute, regulation or ordinance, including but not limited to any law respecting

revenues, taxes, pensions, employee benefits, retirement, labor or environmental protection.

20.     The Purchaser, or if applicable, Second Purchaser, are entitled to, and have the full protections of and all rights under Bankruptcy Code § 363(m) with respect to the Sale and Assignment.  Accordingly, in the absence of a stay pending any timely appeal from this Order, the Purchaser, or if applicable, Second Purchaser, are required to close, the Sale and Assignment approved and authorized herein.

21.     The provisions of Bankruptcy Rules 6004(h) and 6006(d) are hereby dispensed with and waived.

22.     The terms and provisions of this Order shall be binding in all respects upon the Debtor, its estate and creditors, the Purchaser, or if applicable, Second Purchaser, and their respective designees, if any, affiliates, successors and assigns, and any affected third parties including, without limitation, all persons asserting any Encumbrance or claim against or interest in the Debtor, its estate or any of the Property to be sold and assigned to the Purchaser, or, if applicable, Second Purchaser.  The transactions contemplated by this Order shall be specifically performable and enforceable against and binding upon, and not subject to rejection or avoidance by, the Trustee or any successor trustee of the Debtor and its estate.

23.     All of the Debtor's Property purchased by the Purchaser, or if applicable, the Second Purchaser shall be conveyed by the Trustee to, and accepted by the Purchaser, or if applicable, the Second Purchaser, "AS IS", "WHERE IS", "WITH ALL FAULTS", without any express or implied warranty or representation of any kind or nature, except as expressly provided in this Order.  Without limiting the generality of the foregoing, neither the Trustee nor any other person or entity makes any warranty or representation regarding the condition, working order, existence, quantity or location of such assets, and the Purchaser, or, if applicable, Second

{10639490:6}                                              15

Purchaser, shall have no recourse and may not assert any claim against the Trustee, the Debtor, its estate or their representatives based on any such warranty or representation.

24.     The Trustee is authorized and empowered to pay to the Initial Bidder the Break-Up Fee in the amount of $35,000.00 as follows: (i) $17,500 from the sale proceeds upon the closing of the Sale and Assignment, and (ii) $17,500 from the "Carve-Out" (as that term is defined in the Carve-Out Stipulation).  All amounts paid from the sale proceeds of the Sale and Assignment in connection with the Break-Up Fee shall be deducted from the proceeds of the Sale and Assignment prior to calculating the Net Sale Proceeds on which the Carve-Out (as those terms are defined in the Carve-Out Stipulation) is based.

25.     All monies disbursed or turned over from the sale proceeds of the Sale and Assignment shall constitute monies disbursed or turned over by the Trustee to parties in interest, including holders of secured claims pursuant to Bankruptcy Code § 326(a).

26. The terms and provisions of this Order shall be binding and enforceable in all respects upon, and shall inure to the benefit of, the Trustee, the Debtor's estate, the Debtor's creditors, the Purchaser, or, if applicable, Second Purchaser, and their respective affiliates, successors, heirs, trustees, administrators and assigns (as the case may be) and any affected third parties including, but not limited to any and all entities asserting any claim or interest in the Debtor's estate, or any of the Property.



Dated: May 23, 2011
Brooklyn, New York

_____
Joel B. Rosenthal
United States Bankruptcy Judge

{10639490:6}                                      17